## NATIONAL SHEET-METAL ROOFING CO. *v.* SMEETON.

*(Circuit Court, N. D. Illinois.   July 13, 1891.)*

**PATENTS FOR INVENTIONS—NOVELTY—METAL ROOFING PLATES.**
The second claim of letters patent No. 256,083, issued April 4, 1882, to John Walter, for "a sheet-metal roofing plate having one of its lateral edges formed with two parallel corrugations to form a gutter, and the other lateral edge formed with a broad corrugation adapted to make a seam with corrugations, and a cap for the gutter of a corresponding plate," is void for want of novelty, since gutters in rigid roofing plates were previously known.

In Equity.
*H. C. Andrews* and *Lysander Hill*, for complainant.
*Banning & Banning & Payson*, for defendant.

BLODGETT, J.   The bill in this case seeks an injunction and accounting by reason of the alleged infringement of patent No. 256,083, granted April 4, 1882, to John Walter, assignor, to himself and Charles B. Cooper, for a "metal roofing plate."   The inventor, in his specification, says:   "The invention relates to metal plates for roofing houses, and it consists of a plate possessing novel features of construction."   He then describes his plate, which he says may be of any desirable size, as made by having formed near one of its lateral edges two parallel corrugations, so constructed that the inner corrugation shall serve as a catch to hold another plate to be placed at the side thereof, and the outer corrugation shall form, with the inner one, a gutter which will carry off any water which may enter the seam.   Adjacent to the outer corrugation is a flange, having suitable perforations, by which the plate is to be nailed to the roof.   The opposite lateral edge of the plate is to be formed with a single broad corrugation, adapted to cover the corrugations and gutter of its adjacent plate, and the extreme edge of the plate adjacent to the corrugation is bent under to form a hook or catch, which is to engage with the inner corrugation of its adjacent plate.   With this construction, the broad corrugation of one plate overlaps the gutter and corrugations of its adjacent plate, and forms therewith a water-proof seam.   The patent contains four claims, but infringement is only charged as to the second, which is:

"(2) A sheet-metal roofing plate having one of its lateral edges formed with two parallel corrugations to form a gutter, and the other lateral edge formed with a broad corrugation adapted to make a seam with corrugations, and a cap for the gutter of a corresponding plate, substantially as shown."

The defenses are:   (1) That the patent is void for want of novelty; (2) that the second claim is for a mere aggregation of parts, and therefore void and inoperative; (3) that defendant does not infringe.

It will be seen, from the portion of the description of the patent which I have quoted, that the chief feature of the patent is to produce a roofing plate of sheet-metal, the seams of which shall be united by a lock or catch, and thus avoid the use of solder in such seams; and it appears

from the proof that, in all seams made by merely interlocking the edges of the plates, there is danger that water may be driven by the force of the wind or drawn by capillary attraction through the seams, and hence a gutter to catch and carry off such water is a necessity in this class of plates. Mr. Newbury, the complainant's expert, says in regard to this feature:

"It is a well-known fact that seams which allow for the movements of the parts, under the contraction or expansion of the metal which forms the shingles or plates, cannot be made absolutely water-tight, because, where such movement can take place, water can enter under certain conditions; hence the necessity for a gutter to carry off what water may enter, in order that a water-proof seam may be made. If it was not for this fact, the metal and labor taken to form the gutter and second corrugation would be a useless waste."

The proof shows several patents prior to the one in question, for roofing tiles, where the lateral edges of the plates were made with corrugations which were overlapped by the adjacent plates so as to form a gutter to carry off the water which might be driven between into the seam. In the Van Pappelendam patent of June, 1871, tiles are shown made of plates of galvanized iron which are made to overlap each other, and laid in a line diagonally up and down the roof, and these plates are provided with projecting ridges upon their upper edge and side, over which the next plate is to lap, and form thereby a gutter by means of the overlapping plate and the two ridges or projections, the purpose of which is said by the patentee to be to carry off the water which may be driven into the seam or joint. So the Roux & Roux patent of August, 1872, shows roofing tiles with one edge made to form a cap overlapping the edge of the adjacent tile; and upon the edge of the adjacent tile, and underneath this overlapping cap, are two ridges or elevations extending parallel to each other underneath the cap, which form a gutter for carrying off the water which may be driven under the tiles by the wind. And in the Weibrecht patent of May, 1874, a covered gutter is shown for the purpose of carrying off any water that may get into the joint; and the same provision is made in the roofing tile covered by the patent to Bennett issued in February, 1879.

It thus abundantly appears from the proof that gutters or channels to carry off the water which may be driven into the joint of interlocked roofing tiles were old when this inventor entered the field. Earthen or cast-iron tiles, such as are shown in the various patents I have referred to, are, of course, rigid material, and dependent mainly upon their weight for being kept in place upon the roofs; and with such material it is also impossible, of course, to make anything but an overlapping or interlocked joint or seam. When it was deemed desirable to make a roofing plate of flexible material or sheet-metal, the edges of which were to be united by an unsoldered seam, it was, of course, necessary to make the same provision for a gutter that was made in the older devices for the seams or joints of roofing tiles. There is no novelty, therefore, in the device of a gutter where the tiles or roofing plates are joined by a

loose joint, and, in using sheet-metal for this purpose, the gutter could only be provided for or made, except at great expense, by corrugation, in the metal, which corrugations should form the sides of the gutters and, as a covered gutter seems desirable, should be covered by the adjacent plate.

The patent in question discloses no new process or method of manipulation for the purpose of making the corrugations, but they can be made by any implements known to the trade adapted for the purpose. Gutters in rigid roofing plates, therefore, being old, I do not see that there is any invention in making a gutter in flexible or sheet-metal material for a roofing plate, where those plates are to be united by an unsoldered seam or joint. I think, therefore, the defense in this case of want of novelty is clearly made out, and the bill must be dismissed for want of equity.